IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03809-RMR-NRN

KENITH DELESLINE,

Plaintiff,

v.

TOM VILSACK, Secretary, U.S. Department of Agriculture, Forest Service,

Defendant.

---

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, IN PART
## (Dkt. #62)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This race and disability discrimination case is before the Court pursuant to an Order (Dkt. #63) issued by Judge Regina M. Rodriguez referring Defendant Tom Vilsack's ("Defendant") Motion to Dismiss Second Amended Complaint, in Part. (Dkt. #62.) Plaintiff Kenith DeLesline ("Plaintiff") filed a response (Dkt. #68), and Defendant filed a reply. (Dkt. #72.) On June 22, 2022, the Court heard argument from the parties. (*See* Dkt. #73.) The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is **RECOMMENDED** that the subject motion be **GRANTED**.

## BACKGROUND[1]

Plaintiff is African American and has physical disabilities, "including malignant blood pressure, that substantially limit one or more major life activities including, but not limited to, walking, thinking, breathing, performing manual tasks, caring for himself and working." Plaintiff was employed by the United States Department of Agriculture ("USDA"), Forest Service Job Corps (hereinafter "Job Corps" or "the Agency"). Defendant is the Secretary of Agriculture.

Plaintiff filed suit on December 28, 2020. (Dkt. #1.) With Defendant's consent, he filed an Amended Complaint on March 30, 2021. (Dkt. #23.) Defendant moved to dismiss (Dkt. #27), and Judge Christine M. Arguello referred that motion to the undersigned. (Dkt. #32.) After briefing, the Court issued a Report and Recommendation (Dkt. #48) recommending that the motion to dismiss be denied. The case was reassigned to Judge Rodriguez upon her appointment, and she sustained in part and overruled in part Defendant's objection to the Recommendation. (Dkt. #52.) Specifically, she dismissed without prejudice Plaintiff's first claim for harassment/hostile work environment and his third claim for retaliation. The second claim for disparate treatment survived.

On April 13, 2022, again with Defendant's consent, Plaintiff filed a Second Amended Complaint (Dkt. #58), which is the operative pleading. The subject motion to dismiss (Dkt. #62) followed.

---

[1] Unless otherwise noted, all allegations are taken from Plaintiff's Second Amended Complaint (Dkt. #58) and are presumed to be true for the purposes of this motion to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Like his earlier pleadings, Plaintiff's Second Amended Complaint is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* ("Rehabilitation Act"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); and the Equal Access to Justice Act, 28 U.S.C. § 2412, *et. seq.* ("EAJA"). Plaintiff reasserts three claims for relief: (1) harassment/hostile work environment based on race and/or disability, (2) disparate treatment based on race and/or disability,[2] and (3) retaliation.

In his first claim for relief (Dkt. #58 at 9–12, ¶¶ 39–51), Plaintiff alleges that, due to his race and disabilities, he was subjected to harassment that was sufficiently severe or pervasive to alter the terms, conditions, and privileges of his employment and created a hostile and abusive work environment. He gives the following examples:

- Between March 11, 2013 and April 10 2013 Plaintiff's immediate supervisor harassed him by excluding him from meetings, undermining his authority, countermanding instructions he had ordered Plaintiff to issue to subordinate employees, and then ordering him to vacate his office after Plaintiff complained.

- The harassment continued through August 2013, when Plaintiff's supervisor improperly released Plaintiff's medical and other confidential information to other employees, made unwarranted and burdensome demands for medical information when Plaintiff began his intermittent sick leave, and threatened Plaintiff with disciplinary action if he did not accede to those demands. Plaintiff's supervisor had also issued "unprecedented 'no contact'" orders to employees who reported to Plaintiff.

---

[2] Defendant does not seek dismissal of this claim.

(*Id.* at 9–10, ¶¶ 43–44.)

Plaintiff claims that the supervisor did not treat similarly situated, non-disabled

Caucasian employees this way. He points to two comparable managers outside his

protected classes who reported to Plaintiff's same supervisor, but the supervisor did not:

> 1) demand unnecessary or unduly burdensome medical information from the two comparator employees when they requested medical leave; 2) threaten the two comparator employees with AWOL or the removal of their supervisory authority if they failed to provide such information; 3) unilaterally impose "accommodations" on the comparator employees by issuing "no contact" orders to their subordinate staff which interfered with their abilities to do their jobs; 4) disclose the comparator employees' private medical or otherwise confidential information to their subordinates; 5) undermine the authority of the comparator employees by instructing them to issue orders he would then personally countermand, nor did he exclude them from meetings with their subordinate employees concerning matters for which they responsible. Further, the supervisor did not order these comparator employees to move out of their offices, find new offices for themselves, and/or relocate to the other side of the Job Corps Center.

(*Id.* at 11, ¶ 49.)

He also contends that the Agency's National Office Director and Executive

Leadership Team ("ELT") condoned a hostile work environment by not adequately

responding to Plaintiff's complaints and passing him over for two promotional positions.

(*Id.* at 10, ¶ 46.)

In his third claim for relief (*id* at 14–17, ¶¶ 63–76), Plaintiff contends that

Defendant retaliated against him for engaging in protected activities; specifically, for

filing three informal complaints with the Equal Employment Opportunity Commission

("EEOC") against the Agency for denying requests for reasonable accommodations for

his disabilities, and for bringing the harassment to the attention of his supervisors and

other management officials. The instances of retaliation include the following:

- Plaintiff being undermined and then ordered to vacate his office;

- Plaintiff's supervisor sharing his medical information with other employees;

- Plaintiff's supervisor demanding medical information from Plaintiff and the supervisor's supervisor supporting these demands; and

- Plaintiff not being selected for two positions.

Plaintiff alleges that causation can be inferred from the proximity of protected activity and the subsequent harassment, as the longest gap in time was one-and-a-half months, and some instances of alleged retaliation occurred within 24 hours.

## LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the

allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

### I.   Hostile Work Environment

To prevail on a claim for hostile work environment under Title VII, the ADA, and the Rehabilitation Act, a plaintiff must show that (1) he was discriminated against based on a protected ground; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of his employment and created an abusive working environment. *See Morris v. City of Colo. Springs,* 666 F.3d 654, 663

(10th Cir. 2012) (applying standard to Title VII claim); *Brownwood v. Wells Trucking, LLC*, No. 16-CV-01264-PAB-NYW, 2017 WL 9289453, at *7 (D. Colo. Nov. 9, 2017) (applying standard to ADA claim); *Azu v. Sam's Club, Inc.*, No. 18-cv-01956-RBJ, 2019 WL 5577948, at *7 (D. Colo. Oct. 29, 2019) (applying standard to Rehabilitation Act claim).

Judge Rodriguez dismissed Plaintiff's harassment/hostile work environment claim as alleged in his Amended Complaint because Plaintiff did not "set forth any facts regarding how the employees who allegedly did not receive the same harassing treatment as Plaintiff were similarly situated to him." (Dkt. #52 at 4.). Plaintiff failed to cure this deficiency in his Second Amended Complaint.

In *Bekkem v. Wilkie*, 915 F.3d 1258 (10th Cir. 2019), the Tenth Circuit explained the level of specificity required for a discrimination claim to survive a motion to dismiss:

> A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Khalik* [*v. United Air Lines,* 671 F.3d 1188, 1193 (10th Cir. 2012)] (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)). "While we do not mandate the pleading of any specific facts in particular," a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides "sheer speculation." *Id.* at 1194. "[A] plaintiff should have"—and must plead—"at least some relevant information to make the claims plausible on their face." *Id.* at 1193. Thus, it is insufficient for a plaintiff to allege, for instance, that she did not receive an employment benefit that "similarly situated" employees received. *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014). A plaintiff's assertion that she is "similarly situated" to other employees is "just a legal conclusion—and a legal conclusion is never enough." *Id.* Rather, a plaintiff must allege "some set of facts"—not just legal conclusions—"that taken together plausibly suggest differential treatment of similarly situated employees." *Id.* "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (internal quotation marks omitted).

915 F.3d at 1274–75.

One problem, as Defendant notes, is that the two comparators referenced by Plaintiff "requested medical leave from the same supervisor [as Plaintiff] for absences of three days or more." (Dkt. #58 at 12, ¶ 48.) Plaintiff, on the other hand, alleges that he requested a "reasonable accommodation in the form of scheduled, intermittent sick leave over a 60-day period of time." (*Id.* at 8, ¶ 33.) Defendant interprets this to mean that Plaintiff requested 60 days of intermittent leave, but this can also be reasonably read to allege that Plaintiff only needed a certain number of days off during that 60-day period. Plaintiff's response is of no help as he does not address this issue. This lack of clarity is fatal to Plaintiff's claim because it means that he has not plead facts plausibly showing that these employees were, in fact, similarly situated to him. *See MacKenzie v. City & Cnty. of Denver,* 414 F.3d 1266, 1277 (10th Cir. 2005) ("Individuals are considered 'similarly-situated' when they . . . had engaged in the *same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (emphasis added), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018).

Moreover, the Court agrees with Defendant that the Second Amended Complaint does not plausibly allege that Plaintiff's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (quoting *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998)). Plaintiff points to no comments made by his immediate supervisor or any other management officials

that were directed, explicitly or implicitly, at his race or disability status, and "[g]eneral harassment alone is not actionable." *Id.* (citing *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).

Accordingly, the Court recommends that Plaintiff's first claim for harassment/hostile work environment based on race and/or disability be dismissed.

## II.   Retaliation

As in his Amended Complaint, Plaintiff alleges that the discriminatory hostile work environment and failure to promote described above was retaliation for him for requesting reasonable accommodations.

The elements necessary to establish a prima facie Title VII retaliation claim are: (1) the plaintiff engaged in protected opposition to discrimination, (2) the plaintiff suffered a material adverse employment action, and (3) a causal connection exists between the protected opposition and the adverse employment action. *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009); *see also Foster v. Mountain Coal Co.*, LLC, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (applying same standard to ADA retaliation claim); *Cole v. McHugh*, 855 F. Supp. 2d 1253 (D. Colo. 2012) (same elements to establish prima facie case of retaliation under Rehabilitation Act). The "material adversity" element requires a plaintiff to allege action by his employer that is sufficiently adverse that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

The Court agrees with Defendant that Plaintiff's claim for retaliation based on hostile work environment necessarily fails because, as discussed above, the Second

Amended Complaint does not plausibly allege that Plaintiff was subjected to a severe or pervasive hostile work environment due to his race and/or disability.[3] *See McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006) ("[T]o succeed on a retaliation claim based on a hostile work environment . . . [t]he behavior complained of must render the workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."). "[P]etty slights, minor annoyances, and simple lack of good manners" will not deter "a reasonable worker from making or supporting a charge of discrimination." *Id.* at 742 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). Plaintiff's supervisor's actions may have been spiteful and inappropriate, but, as alleged, they do not amount to severe discriminatory harassment. *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1216 (10th Cir. 2010) (stating that "alleged snubs" that included supervisors giving her the "'cold shoulder,'" sitting farther away from her at meetings, being too busy to answer her questions, and generally trying to avoid her were insufficient to support a claim of retaliation). And, as Defendant points out, Plaintiff was not deterred from filing EEOC complaints. *See Bush v. Mukasey*, 2008 WL 3833815, at *8 (D. Utah Aug. 13, 2008) ("Plaintiff's repeated actions in pursuing individual claims before the EEOC serve to negate her argument that a reasonable employee confronted with the same kind of adverse employment

---

[3] Judge Rodriguez dismissed this claim as alleged in the Amended Complaint because Plaintiff alleged no additional evidence beyond temporal proximity to link the adverse employment action to a discriminatory or retaliatory motive. (Dkt. #52 at 9.) Defendant does not raise this argument in the subject motion.

actions would have been dissuaded from raising additional challenges to the alleged ongoing discrimination.").

However, Plaintiff also alleges that he was retaliated against in a more concrete way than being subjected to workplace harassment from his supervisor. He claims that he was twice passed over for promotion because he complained of this harassment. This is a discrete issue.

Plaintiff first alleges that he complained to his second level supervisor and members of the ELT of his supervisor's harassment on April 17, 2013, and followed up with the second level supervisor on June 17, 2013. (Dkt. #58 at 7–8, ¶ 32.) Then, on July 30, 2013, he was not selected for the first promotion. (*Id.* at 8, ¶ 34.)

Next, Plaintiff alleges that on August 9, 2013, the second level supervisor, presumably in response to a complaint from Plaintiff, "expressed her support for and agreement with" the supervisor's "unnecessary and unduly burdensome medical information from Plaintiff to support his use of sick leave." (*Id.* at 8, ¶¶ 34–35.) On August 20, 2013, Plaintiff was not selected for the second promotion.

Thus, unlike in his Amended Complaint, Plaintiff now alleges that the protected activities were not merely filing the EEOC complaints; they also included his informal complaint to his supervisor and his "second level supervisor." Informal complaints can be considered protected activity, *see E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 804 (10th Cir. 2007), so the first element of a retaliation claim as been met at this stage.

Next, not being promoted constitutes a materially adverse employment or personnel action.[4]

However, Plaintiff has again failed to sufficiently plead that there was a causal connection between his informal complaints and his being passed over for promotion. "A causal connection is established where the plaintiff presents 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Garrett v. Hewlett-Packard* Co., 305 F.3d 1210, 1221 (10th Cir. 2002) (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999)). Plaintiff alleges that "causation can be inferred from proximity in time alone when the Agency's adverse decision or action follows very closely after the plaintiff's protected activity," but that is only true if the second level supervisor to whom Plaintiff complained can somehow be considered synonymous with "the Agency"; i.e., that the second level supervisor is responsible for the adverse action. The Court cannot make this inferential leap because Plaintiff's allegations regarding the role the second level supervisor had in the hiring process are both conclusory and contradictory. Plaintiff pleads no facts that describe how or to what extent the second level supervisor was involved in the decision to not promote Plaintiff. Without this factual enhancement, Plaintiff's claims are conclusory and insufficient to meet the Rule 12(b)(6) pleading standard. Moreover, in summarizing his complaint to the EEOC, Plaintiff states that it

---

[4] The parties disagree as to what standard a federal employee must meet in asserting a retaliation claim, but failure to promote is both an materially adverse employment action, *see Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (an adverse employment action "includes significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits") (quotation omitted), and an adverse personnel action, *see* 5 U.S.C. § 2302(a)(2)(A)(ii) (defining "personnel action" to include "a promotion").

was the Job Corps National Director and ELT members who did not select him for the positions. (*See* Dkt. #58 at 2, ¶ 5.) Although he later claims that the second supervisor was also involved with this decision (*see id.* at 15, ¶ 68 ("Plaintiff learned that although the Job Corps deemed him qualified, his second level supervisor, members of the ELT and the National Director chose not to select him for the Center Director position at Pine Knot Job Corps Center."); *id* at 16, ¶ 71 (" As before, Plaintiff's second level supervisor, ELT members and the National Director had once again selected a candidate who, unlike Plaintiff, had not participated in protected activity."), he does not explain how or otherwise reconcile the internal pleading inconsistencies. Therefore, the Second Amended Complaint does not establish causation for purposes of Plaintiff's retaliation claim.

## RECOMMENDATION

It is hereby **RECOMMENDED** that Defendant Tom Vilsack's Motion to Dismiss Second Amended Complaint, in Part (Dkt. #62) be **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated:  November 21, 2023
        Denver, Colorado

        _____
        N. Reid. Neureiter
        United States Magistrate Judge