**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-03809-RMR-NRN

KENITH DELESLINE,

    Plaintiff,

    v.

TOM VILSACK, Secretary, U.S. Department of Agriculture, Forest Service,

    Defendant.

---

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

    Pursuant to Fed. R. Civ. P. 56, Defendant Tom Vilsack, as Secretary of the U.S. Department of Agriculture, moves for summary judgment on Plaintiff Kenith DeLesline's remaining claims for race and disability discrimination. Plaintiff is an employee of the Forest Service, an agency within the Department of Agriculture. In 2013, Plaintiff applied, but was not selected for, two Center Director positions. He contends these non-selections were discriminatory based on his race, in violation of Title VII, 42 U.S.C. § 2000e *et seq*, and his disability, in violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq*. But the undisputed facts show that no reasonable factfinder could conclude that the Forest Service's reasons for not selecting him were discriminatory.

### STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

**A.    Background**

1.    Plaintiff is African American. ECF No. 58, ¶ 23.

---

[1] These facts are accepted as true for purposes of this motion.

2.  Plaintiff's qualifying disabilities are malignant hypertension and diabetes. Movant's Appx., p.2-3 (Plaintiff's Suppl. Disc. Resp.).

3.  Plaintiff has been continuously employed by the Forest Service since 2000. Movant's Appx., p.6 (29:7-29:24) (Plaintiff's Deposition).

4.  From 2008 until 2013, Plaintiff held two permanent positions. Movant's Appx., p.24, 27 (Plaintiff's Resume).

5.   From January 2008 to August 2011 he was the Residential Living Manager at Cass Jobs Corps Center. *Id.* at 27.

6.  From August 2011 through 2015, he was the Deputy Center Director at Ouachita Jobs Corps Center. *Id.* at 24.

7.  Plaintiff served two, three-to-five month-long temporary details (promotions) as an Acting Center Director during that time, including one at the Columbia Basin Jobs Corps Center from December 2012 to February 2013. *Id.* at 26-28.

**B.     The selection processes for the positions**

8.  In April 2013, Job Corps advertised for two Center Director positions, one at the Pine Knot Job Corps Center in Kentucky (Pine Knot position), and one at the Columbia Basin Jobs Corps Center in Washington (Columbia Basin position). Movant's Appx., p.30-38 (Pine Knot position announcement, Columbia Basin position announcement).

9.  A Center Director is responsible for managing the Jobs Corps Center, including supervising key staff, developing training plans, conducting performance evaluations, resolving grievances, taking disciplinary actions, and providing for the development, education, and vocational training of a disadvantaged or at-risk student population.

Movant's Appx., p.31 (Pine Knot position announcement) and p.37 (Columbia Basin position announcement).

10. Each position announcement informed candidates they would be evaluated on various factors, some as described in candidates' resumes ("education, experience, and training") and others assessed through responses to questions ("knowledge of residential programs dealing with youth education and training; ability to develop and maintain cooperative internal and external relations (communicate other than in writing); ability to plan and organize work; ability to supervise; ability to communicate in writing; and ability to analyze complex programs"). Movant's Appx., p.32 (Pine Knot position announcement) and p.38 (Columbia Basin position announcement).

11. Plaintiff applied for both positions. ECF No. 58, ¶¶ 56, 59.

12. Recommending (Hiring) Panels were assembled to evaluate candidates and put forth recommendations to a final decision-maker. Movant's Appx., p.43-45 (Terrell Affidavit).

13. Per Forest Service requirements, the Panels contained at least three diversity members (in terms of ethnicity, race, gender, age, and position). *Id.* at 43.

14. The panel members independently ranked each candidate's qualifications relative to the position duties and identified the top candidates to interview. *Id.* at 44-46.

15. For each position, some or all Panel members conducted thirty-minute interviews, during which each candidate was asked the same questions. *Id.* at 46-47.

16. The interview questions sought information about candidates' leadership skills; ability to handle conflict; communication skills; and experience planning and handling work assignments, interacting with the public, and serving at-risk youth. *Id.* at 46-47.

17. Following interviews, the Panel members identified, in concurrence documents, the top candidates to refer to the Selecting Official for final hiring decisions. *Id.* at 48-49; *see also* Movant's Appx., p.85 (Pine Knot Concurrence document); Movant's Appx., p.88 (Columbia Basin concurrence).

**C.     Pine Knot selection**

18. The Hiring Panel for the Pine Knot position was composed of members of the Forest Service Executive Leadership Team, including Tina Terrell, Peggy Hendren, Sharon DeHart, Harris Maceo, and Lisa Fisher. Movant's Appx., p.85 (Pine Knot Concurrence document).

19. Terrell and Maceo are African-American and Hendren has a disability. Movant's Appx., p.40 (Terrell Affidavit); p.91 (Maceo Affidavit); p.97 (Hendren Affidavit).

19. Terrell was the final decision-maker for the Pine Knot position. Movant's Appx., p.43 (Terrell Affidavit).

20. The Pine Knot panel reviewed the applications and selected five candidates, including Plaintiff, to interview. *Id.* at 46.

21. Terrell found Plaintiff's interview to be "extremely poor," as, in her view, he "rambled in his responses and provided information that did not pertain to the question," which led Terrell to believe that he was not organized. *Id.* at 51-52.

22. Hendren too found that Plaintiff rambled and was not concise. Movant's Appx., p.100 (Hendren Affidavit).

23. Terrell viewed the interview as intended in part to assess candidates' time management skills, and she found that Plaintiff, as the only interviewee to exceed the

allotted thirty-minutes, did not demonstrate good time management. Movant's Appx., p.51 (Terrell Affidavit).

24.  The Panelists noted that Plaintiff, in the interview, identified time management as one of his challenges. Movant's Appx., p.107, 110, 113, 116 (Pine Knot Panelists' interview notes).

25. When asked about his ability to handle stress and conflict, Plaintiff shared that he sometimes lets his emotions play into his decisions. *Id.* at 108, 111, 114.

26. In Fisher's view, "a Center Director must remain neutral in a conflict." Movant's Appx., p.136 (Fisher affidavit).

27. Outside of the interviews, Hendren had heard that when Plaintiff was Acting Center Director at Columbia Basin, he would come to work late or not let his staff know when he would be on site. Movant's Appx., p.100 (Hendren Affidavit).

28. These reports were Hendren's primary reason for not recommending Plaintiff; she did not believe this modeled a good work ethic for staff and students. *Id.*

29. Maceo, too, relied on reports about Plaintiff's performance in the Acting Center Director role, including that other Center management did not know when he was coming to the Center. Movant's Appx., p.141 (27:17-27:24) (Maceo Deposition).

30. Terrell knew of problems with Plaintiff's past performance, including lack of attendance at Center Director meetings and failure to timely submit travel documentation, which gave her "major reserves" with Plaintiff serving as a Center Director. Movant's Appx., p.149-150 (65:13-65:21, 80:5-80:20) (Terrell Deposition).

31.  Plaintiff was not recommended by the Panel as a finalist. Movant's Appx., p.85-86 (Pine Knot Concurrence).

32. Brandon Pfeilmeier was selected for the Pine Knot Center Director position. *Id.*

33. At the time of his selection, Pfeilmeier was the Acting Center Director for the Pine Knot Center. Movant's Appx., p.86 (Pine Knot Concurrence).

34. Pfeilmeier's permanent position was Deputy Center Director at Schneck Job Corps Center, a position he had held for almost two years, longer than the time Plaintiff had then served as a Deputy Center Director. *Compare* Movant's Appx., p.160 (Pfeilmeier resume) *with* p.24 (Plaintiff's resume).

35. The Panelists noted Pfeilmeier's relevant internal experience, as well as his extensive military experience (which included supervisory positions) his experience dealing with youth, ability to handle conflict and controversy, and strategic planning skills. Movant's Appx., p.132 (Pine Knot Panelists' notes).

36. Panel members made notes of Pfeilmeier's answers to interview questions; for example, when asked the question posed about his ability to handle stress and conflict, Pfeilmeier responded that he is "trained in handling stressful situations," "does not take it personally," and tries to understand the persons involved. *Id.* at 124.

37. Pfeilmeier is white and does not identify as having a disability. Movant's Appx., p.158-59 (Defendant's Supplemental Discovery Responses).

38. The same Pine Knot Panel simultaneously hired, from an overlapping list of candidates, for another Center Director position at the Curlew Jobs Corps Center, and selected Eric Bracken, who is disabled. *Id.*; Movant's Appx., p.165 (Curlew position concurrence).

**D.    Columbia Basin selection**

39. The Panel for the Columbia Basin selection included Terrell (the Selecting Official or final-decision maker), Hendren, DeHart, and Fisher. Movant's Appx., p.53 (Terrell Affidavit); p.167 (Columbia Basin Summary Note).

40. After the Panel reviewed thirty-eight applications, two of the Panel members—Terrell and Hendren—conducted interviews of eleven candidates, including Plaintiff. Movant's Appx., p.167 (Columbia Basin Summary Note).

41. Terrell and Hendren used the same interview questions for the Columbia Basin position as those asked during the Pine Knot interviews. Movant's Appx., p.59 (Terrell Affidavit); *Compare* Movant's Appx., p.110-112 (Pine Knot Panelists' notes) *with* p.185-187 (Columbia Basin Panelists' interview notes).

42. Terrell found that Plaintiff performed more poorly in the Columbia Basin interview, as he exceeded the allotted interview time and, in her view, was not organized, clear, or succinct. Movant's Appx., p.59 (Terrell Affidavit); Movant's Appx., p.187 (Columbia Basin Panelists' interview notes) (noting Plaintiff ran out of time).

43. Terrell wrote, in her contemporaneous notes, that Plaintiff struggled to answer interview Questions 2 and 6 and, when asked to identify his challenges, answered in a way that she perceived to be a criticism of others, not a self-reflection on his own areas for improvement. Movant's Appx., p.59 (Terrell Affidavit), p.182-83 (Columbia Basin Panelists' interview notes).

44. Terrell was also aware of issues with Plaintiff failing to communicate with Center management when he was Acting Director at Columbia Basin, including a day where she had received a call from an administrative officer at the Center telling her he could not find Plaintiff. Movant's Appx., p.147-48 (54:2-55:12) (Terrell Deposition).

7

45. Hendren, who had a new position in which she oversaw the Ouachita Jobs Corps Center (where Plaintiff was Deputy Director), had heard that Plaintiff lacked collaborative and teamwork skills, and had difficulty working with others, especially leadership. Movant's Appx., p.101 (Hendren Affidavit).

46. Hendren had spoken with an employee Plaintiff supervised, who requested to end his temporary detail in Ouachita early because he found Plaintiff intimidating and overbearing. Movant's Appx., p.189-90 (Response to Interrogatory No. 25 in Administrative Case).

47. Hendren had recent first-hand experience with Plaintiff's communication; shortly before the selection she received an email from him that she found "unproductive and inappropriate." Movant's Appx., p.192-93 (Hendren Supplemental Affidavit).

48. Plaintiff was not among the five finalists recommended by the Panel. Movant's Appx., p.88-89 (Columbia Basin Concurrence).

49. Michael Kelly, who is white and has a disability, was selected for Columbia Basin. *Id.* at 88; Movant's Appx., p.196 (Kelly SF-52 Form) (Box 23 showing veterans preference for 30% disability).

50. At the time of the selection, Kelly was the Acting Center Director at Columbia Basin, and his permanent position was Works Programs Officer at Columbia Basin, a role in which he supervised staff who developed youth training plans. Movant's Appx., p.197-98 (Kelly resume).

51. The Panel highlighted Kelly's military experience, which Panelists felt served him well in leading a team, handling conflict, managing a budget, implementing and

prioritizing decisions in an inclusive way, and accomplishing goals. Movant's Appx., p.88-89 (Columbia Basin Concurrence); p.188 (Columbia Basin Panelists' notes).

**E. Plaintiff's beliefs on why the non-selections were discriminatory.**

52. Plaintiff believes he was more qualified than the selectees in two respects: years of internal experience and education. Movant's Appx., p.12-13 (134:2-134:11), p.14 (148:1-148:10) (Plaintiff's Deposition).

53. Specific to race, Plaintiff speculates that his direct supervisor at Ouachita Jobs Corps Center, Charles Root, had an "'angry black man' belief" about Plaintiff, *id.* at 18 (191:8-191:11), 19-20 (228:9-229:21), because, following an instance where Plaintiff did not follow a direction from Root, Plaintiff thought that Root and Hendren may have discussed that Plaintiff was "difficult." *Id.* at 19-20 (228:9-229:21).

54. Charles Root was not a Panel Member, in fact he was a candidate for the Columbia Basin position. *See* Movant's Appx., p.88 (Columbia Basin concurrence).

55. Plaintiff does not have direct knowledge that this conversation between Hendren and Root occurred. Movant's Appx., p.18 (Plaintiff's Deposition).

56.  Plaintiff also speculates that when Hendren and Terrell questioned his arrival time and whereabouts while he was Acting Center Director at Columbia Basin, their questioning reflected a belief that "Black people's time is something that is derogatory." *Id.* at 20 (229:16-229:23).

57. Plaintiff did not identify any other instance which he believed evidenced racial animus. *Id.* at 19-20 (228:9-229:23).

58. As for disability discrimination, Plaintiff first points to a time where, in early 2012, Plaintiff filed an EEO complaint after he was denied a disability accommodation while he

was working as a Deputy Center Director. *Id.* at 13, 15 (139:2-139:7; 154:3-154:10); *see* Movant's Appx., p.3 (Plaintiff's Supplemental Discovery Responses).

59. Plaintiff testified that during this interactive process, Hendren told him he could not be a Center Director with the accommodations his doctor was then recommending, which included working from home 2 or 3 days a week. *Id.* at 15-17 (154:15-156:5).

60. During the selection processes at issue, no member of the Executive Leadership Team (of which all the Hiring Panel members were) told him that he was not capable of doing the Center Director job because of his disability. *Id.* at 13 (139:11-139:20).

61. Terrell understood that Plaintiff could perform the essential functions of a Center Director position without accommodations, and Plaintiff did not request an accommodation during the selection process. Movant's Appx., p.42 (Terrell Affidavit).

62. Second, Plaintiff contends that Hendren, upon learning that he had not submitted required paperwork verifying that he could return to work full-duty following a worker's compensation absence, attempted to end his detail as Acting Center Director at Columbia Basin early. *Id.* at 8-10 (71:14-74:3); Movant's Appx., p.203-204 (emails relating to workers' compensation medical release paperwork).

63. Prior to starting his Columbia Basin detail, Plaintiff was in a car accident that required him to take a workers' compensation absence, and when he returned to work he was on light duty. Movant's Appx., p.8 (71:14-71:17) (Plaintiff's deposition).

64. During his Columbia Basin detail, a human resources specialist emailed him to request that he submit a medical release to full duty. Movant's Appx., p.204 (emails relating to workers' compensation medical release paperwork).

63. Plaintiff informed the human resources employee that he would not be able to see his doctor until after he left his temporary detail. *Id.*

64. Despite Plaintiff not providing proper documentation, Terrell allowed him to remain in the role. Movant's Appx., p.76 (Terrell Affidavit). *Id.* at 8-10 (71:14-74:3).

65. Plaintiff's workers' compensation absence was unrelated to his disability. ECF No. 100, p.17 ¶ 67.

### SUMMARY JUDGMENT STANDARD IN EMPLOYMENT CASES

In an employment discrimination case where (as here) there is no direct evidence that the employer's decisions were discriminatory, the Court must evaluate a motion for summary judgment using the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973); *Litzsinger v. Adams Cnty. Coroner's Off*., 25 F.4th 1280, 1287 (10th Cir. 2022). Under that framework, if the plaintiff (at step one) presents a prima facie case of discrimination (which is "not onerous"), *Smothers v. Solvay Chemicals, Inc*., 740 F.3d 530 (10th Cir 2014), the employer must proffer a legitimate, non-discriminatory reason for the challenged decision. *Litzsinger,* 25 F.4th at 1287. Once the employe does so, the plaintiff has the burden to respond with evidence that would permit a reasonable factfinder to find that the employer's proffered reason was pretext for discrimination. *Id.*

For purposes of this Motion, the Forest Service does not dispute that, at step one, Plaintiff can establish a *prima facie* case for race and disability discrimination. At step two, the Forest Service has identified legitimate non-discriminatory reasons for its hiring decisions. Thus, at step three, the burden returns to Plaintiff to demonstrate that the Forest Service's reasons were a pretext for discrimination.

In making a pretext determination at summary judgment, the Court must view "all of the evidence" presented to assess the "ultimate question," which is "whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 153 (2000). While a court must view the evidence in the light most favorable to the non-movant, *Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997), conclusory statements based on conjecture, speculation, or subjective beliefs do not constitute competent evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Here, the record evidence, even when viewed favorably to Plaintiff, would not permit a reasonable factfinder to find that the Forest Service's reasons were a pretext for discrimination.

## ARGUMENT

I.   **The Forest Service presented legitimate, non-discriminatory reasons for the selection decisions.**

For both the Pine Knot and Columbia Basin selection decisions the members of the Hiring Panels articulated non-discriminatory reasons for their decisions not to recommend Plaintiff to the final round of finalists in either selection.

A view that other candidates are stronger is a nondiscriminatory reason for a decision not to select a candidate. *See Anderson v. Fort Hays State Univ.*, No. 22-3141, 2023 WL 2945859, *3 (10th Cir. April 14, 2023) (employer's statement that the plaintiff "was not the best candidate for the tenure-track position and that [the selectee] was a better candidate" is a legitimate reason, particularly where the plaintiff was not included in the group of candidates moved to the next step of a selection process); *Kane v. Quorum Health resources, LLC*, Case No. 19-cv-03267-RMR-MDB, 2022 WL 4010668,

*6 (D. Colo. Aug. 4, 2022) (view that the plaintiff lacked leadership skills and the ability to establish professional relationships is legitimate, non-discriminatory reason).

Here, the Panelists identified nondiscriminatory reasons for not advancing Plaintiff. They viewed the selectees as stronger candidates than Plaintiff based on holistic considerations of their relevant internal and external experience, strengths and skillsets, and interview performance. And the Panel members gave multiple nondiscriminatory reasons for not advancing Plaintiff:

- Panelists viewed Plaintiff's interviews as poor: they felt he gave rambling and non-concise answers that suggested he was disorganized, and sometimes struggling to answer questions. *See* Movant's Appx., p.51-52, 100.

- Panelists viewed time management as an important skill for a Center Director, and noted that Plaintiff stated that time-management was a challenge for him and exceed his allotted interview time. *See id.* at 51-52, 107, 110, 113, 116.

- In the Pine Knot interview, Plaintiff expressed that he can become emotionally invested in conflicts, a response that conflicted with one panelist's view of how a Center Director should act. *See id.* at 108, 111, 114, 136.

- Panel members had concerns about Plaintiff's past performance, including communication of his availability during work hours to staff, attendance at Center Director meetings, and teamwork and interpersonal skills. *Id.* at 100, 141, 149-50.

Accordingly, the burden shifts to Plaintiff to show these proffered reasons are "not the true reason for the employment decision." *Lewis v. Peabody Rocky Mountain Servs., LLC*, No. 22-1349, 2023 WL 4927248, at *3 (10th Cir. Aug. 2, 2023).

## II.   The Forest Service's reasons for the selections are not a pretext for race or disability discrimination.

Plaintiff lacks evidence sufficient to permit a reasonable factfinder to conclude that the Forest Service's reasons for the non-selections were discriminatory.

Pretext may be established where a reasonable factfinder could find the employer's proffered reasons unworthy of belief and infer a discriminatory motive based on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in those reasons. *Riser v. QEP Energy*, 776 F.3d 1191, 1200 (10th Cir. 2015). An employee must generally proffer evidence to show *each* of the employer's justifications are pretextual. *Jaramillo v. Colorado Jud. Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005), *as modified on denial of reh'g* (Dec. 20, 2005).

In analyzing pretext, courts focus not on whether the employer's decision was wise or fair, but on whether the decision-makers "honestly believed those reasons and acted in good faith upon those beliefs." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 971 (10th Cir. 2017); *see also Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1133 (10th Cir. 2014) ("Courts do not sit as 'super-personnel departments,' assessing whether an employer's evaluation of the relative merits of different employees is wise, fair, or even necessarily correct"). In doing so, courts "examine the facts as they appear[ed] to the person making the decision." *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001); *see also Dewitt v. Sw. Bell Tel. Co.,* 845 F.3d 1299, 1310-12 (10th Cir. 2017) (rejecting a rule that would require the employer to demonstrate "reasonable reliance" on the facts on which the decision was made). Courts thus focus on the employer's perspective, and do not "look to the plaintiff's subjective evaluation of the situation." *DePaula*, 859 F.3d at 971.

Plaintiff's theories that the selections were discriminatory fall into four categories: (i) his subjective view that he was more qualified than the selected candidates; ii) his opinion that the reasons Panelists gave for their decisions were inconsistent; iii) his

speculation that others had perceptions about him that were racially motivated; and iv) his view that two comments about him, outside the context of the selection processes, intimate some animus to his disability. But examination of the record evidence demonstrates that none of these theories reasonably suggests that the Forest Service's reasons for the selections were pretext for discrimination.

### A. Plaintiff does not present evidence that he was overwhelmingly more qualified.

Plaintiff relies primarily on his belief that he was more qualified than the other candidates. To show pretext on such a theory, a plaintiff must "come forward with facts showing an *overwhelming* disparity in qualifications." *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (emphasis added); *see also Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1219 (10th Cir. 2022) (minor differences in qualifications nor an employee's subjective belief that he is more qualified show pretext).

Moreover, a plaintiff must show that he is objectively more qualified "*on the whole*, taking into account all of the factors that [the employer] found relevant"—it is not sufficient for a plaintiff to identify only specific areas in which he has superior credentials. *Anderson*, 2023 WL 2945859, *3-4 (quoting *Conway v. Vilsack*, 707 F.3d 1163, 1174 (10th Cir. 2013)); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646 (4th Cir. 2002) (recognizing that the appropriate inquiry focuses on the criteria as defined by the employer). Seniority alone, for example, will not create a sufficient disparity in qualifications when other factors are considered. *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994).

The evidence does not show that Plaintiff had the sort of overwhelming, across-the-board merit disparity needed to show pretext for discrimination. Instead, Plaintiff

puts forward the evidence akin to that which the Tenth Circuit rejected as insufficient to show pretext in the *Anderson* case, 2023 WL 2945859, *3-4. Plaintiff contends he was more qualified than the successful applicants in just two respects (education and internal seniority) of many considered by the Panelists. *See* Movant's Appx., p.12 (134:2-134:11), p.14 (148:1-148:10) (Plaintiff's Deposition).

As for the Pine Knot position, Plaintiff testified that he had more experience than the selectee, specifically because Pfeilmeier "was only a deputy [Center Director] for a year and a half to two years." *Id.* at 134:2-134:11. But Pfeilmeier had actually been a Deputy Center Director *longer* than Plaintiff: Pfeilmeier began in that role in July 2011, whereas Plaintiff began in August 2011. *Compare* Movant's Appx., p.24 (Plaintiff's Resume) *with* Movant's Appx., p.160 (Pfeilmeier resume). In addition, Plaintiff testified that Pfeilmeier "didn't have any center director details." Movant's Appx., p.12 (134:8-134:9) (Plaintiff's Depo.). But Pfeilmeier was serving in the Acting Center Director role at Pine Knot. Movant's Appx., p.86 (Pine Knot Concurrence). Plaintiff does not address Pfeilmeier's many years of relevant external experience. Movant's Appx., p.160-62 (Pfeilmeier resume). Plaintiff also contends that he had more education than Pfeilmeier. While Plaintiff had a Master's Degree and Pfeilmeier had only a Bachelor's Degree, the job posting did not require a post-graduate degree, and there is no evidence that the Panel sought someone with a post-graduate degree. Movant's Appx., p.30-38 (Pine Knot and Columbia Basin position announcements).

As the Columbia Basin selectee, Plaintiff relies on the same factors in which he contends his candidacy was superior: internal experience and higher education. Movant's Appx., p.14 (148:1-148:10) (Plaintiff's Deposition). In terms of experience,

Plaintiff points only to the fact that he had more years of internal experience with the Forest Service than Kelly. But Plaintiff's comparison omits Kelly's relevant internal *and* external experience, including that he had served in a leadership role at the Columbia Basin Center for over five years, and had decades of military experience, which the Panel emphasized as valuable. Movant's Appx., p.197-201 (Kelly Resume); p.88-89 (Columbia Basin Concurrence). As for education, it is true that Kelly had only an Associate's Degree, *see* Movant's Appx., p.202 (Kelly Resume), but again Plaintiff offers no evidence that the Panel considered candidates' degrees in choosing finalists and Kelly. Movant's Appx., p.88-89 (Columbia Basin Concurrence).

Plaintiff's argument that he was more qualified in education and experience than the selectees disregards other factors the Panelists valued in making holistic hiring decisions. From the interview questions asked, it is clear that Panelists considered interpersonal skills, time management, and ability to handle conflict. Movant's Appx., p. 107-09 (Pine Knot interview questions); p.170-73 (Columbia Basin interview questions). The Panel members found the successful candidates superior in those respects. Movant's Appx., p.88-89 (Columbia Basin Concurrence) (noting the Panelists perception that Kelly's military experience served him well in managing conflict, and emphasizing his interpersonal skills, ability to resolve priorities, and that he involved others in decision-making); p.188 (Columbia Basin Panelists' notes highlighting the Panelists views that Pfeilmeier had experience in "handling controversy," "managing conflict," and "strategic planning"). Plaintiff agreed these are important characteristics for a Center Director. *id.* at 11 (85:13-85:19 (Center Directors are responsible for

ensuring employees get along). Plaintiff has not presented evidence to suggest he was superior in those skills.

Even assuming Plaintiff could show that he was a better choice—which he cannot—he has not raised a genuine dispute of material fact to show an "overwhelming" merit disparity. *See Brown v. Colo. Judicial Dep't,* No. 22-1065, 2023 WL 4743055, *5 (10th Cir. July 25, 2023) (when a court "address[es] who was a better choice, [it] must proceed with caution" and "it require[s] the plaintiff to present facts showing an overwhelming disparity in qualifications"). Without evidence of this sort of overwhelming disparity, Plaintiff has not demonstrated pretext.

### B. Plaintiff has not pointed to any inconsistency in the Forest Service's reasons for the selection decisions, let alone any that suggests pretext.

Plaintiff contends that pretext can be found because different Panel members gave different reasons for not selecting him, and later elaborated on their reasons.

Pretext does not exist merely because different decision-makers had different reasons for their employment decisions. *See, e.g., Conroy v. Vilsack*, 707 F.3d 1163, 1174-75 (10th Cir. 2013) (emphasizing that the pretext inquiry focuses on the facts as they appear to the person making the decision, and concluding that discrepancies in various panel members' evaluations of a candidate were insufficient to show pretext); *Russell v. Harlow*, 771 F. App'x 206, 207 (4th Cir. 2019) (inconsistencies in different panel members' explanations for a selection decision did not cast doubt on their individual explanations for the decision); *Fuentes v. Perskie*, 32 F.3d 759, 767 (3d Cir. 1994) ("the fact that the relevant decisionmakers disagree about the plaintiff's qualifications does not evidence discrimination"). Thus, Plaintiff's contention that some Panel members, like Maceo, felt he had a "fine interview," while others evaluated his

18

interview as poor, *see* ECF No. 100, p. 8, ¶ 35, does not show pretext.

As for Plaintiff's view that the Panelists elaborated on their reasons for not selecting Plaintiff in their depositions, Plaintiff has not pointed to circumstances suggesting this elaboration shows pretext. Under certain circumstances, a jury might infer pretext when an employer provides one explanation for an employment decision and later affirmatively disclaims or otherwise abandons the rationale. *Litzsinger*, 25 F.4th at 1291. But such "inconsistency evidence only shows pretext if 'the employer has changed its explanation under circumstances that suggest dishonesty or bad faith.'" *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1002 (10th Cir. 2011) (quoting *Jaramillo*, 427 F.3d at 1310). For example, in *Jaramillo*, the Tenth Circuit explained that even when the employer later offered brand new reasons for its decision, that abrupt change may not show pretext if the timing of the change is not suspicious and the new rationale has an evidentiary basis. 427 F.3d at 1311.

Here, there was no such abrupt change in reasons. Some Panelists, including Terrell and Maceo, elaborated in depositions on the reasons Plaintiff was not selected— such as his performance as Acting Center Director—with details not included in their initial affidavits. *See* ECF No. 100 at 9 ¶ 40, 11-12 ¶ 48, and 22 ¶ 91. But there is no evidence that the Panelists abandoned or affirmatively disclaimed any of the reasons they initially offered for the non-selections.[2] Nor is there evidence that the additional elaborations were inconsistent.

---

[2] In fact, an additional reason offered by Terrell and Maceo—concerns about Plaintiff's past performance—was a reason Hendren had originally identified in her affidavit. Movant's Appx., p.100 (Hendren Affidavit).

In *Litzsinger*, the Tenth Circuit rejected a similar attempt to demonstrate pretext. 25 F.4th at 1292. There, the plaintiff argued that the employer's addition of reasons for the plaintiff's termination, not initially proffered but testified to in a deposition, demonstrated those reasons were pretextual. *Id.* at 1293. *Litzsinger* rejected this theory of pretext, explaining that "providing additional justifications for [adverse employment actions] without abandoning the primary reason [for the action] does not establish pretext" where the plaintiff has not presented evidence showing those reasons should not be credited. *Id.* at 1292-93.

Here, minor differences between the Panelists' perceptions, and their elaboration on the bases for the non-selections, do not show pretext.

### C.  Plaintiff's theory that some Panelists were racially motivated is based on his subjective speculation and is unsupported by evidence.

Plaintiff relies on two subjective, speculative opinions in support of his race discrimination claim: 1) that he may have been viewed as a "stereotypical angry Black man"; and 2) that concerns about his availability and working hours while he served at Columbia Basin amounted to "racial slurs." *See* Movant's Appx., p.20.

A plaintiff cannot demonstrate pretext merely by speculating that an action or comment is attributable to discriminatory animus. *See Anderson*, 2023 WL 2945859, at *5 (where instances of claimed discrimination, such as a statement by a supervisor, can only be speculatively attributed to discriminatory animus, this "will not suffice for evidence" of pretext); *Markley v. U.S. Bank Nat'l Ass'n,* 59 F.4th 1072, 1083 (10th Cir. 2023) (a "plaintiff cannot survive summary judgment where the evidence he produces permits nothing more than a speculative basis for believing discrimination was a motivating factor").

20

Plaintiff's theory of animus is based only on such subjective speculation. First, he believes that his supervisor at Ouachita, Charles Root (who was not a panel member, and in fact, was an applicant for the Columbia Basin position, *see* Movant's Appx., p.88) viewed him as an "angry Black man." Movant's Appx., p.18 (191:8-191:11) (Plaintiff's Deposition). In support, Plaintiff described an incident in which he did not follow Root's direction, and he speculated that because of that, Root perhaps viewed him as angry or difficult and shared this view with Hendren. *Id.* Plaintiff has no direct knowledge that this conversation ever occurred. *Id.* at p. 20. Plaintiff also has no evidence, other than his personal feeling, that Root held this perception of him, let alone attributed it to his race.

Second, Plaintiff subjectively believed that the Panelists' concerns about his availability to staff and his working hours as Acting Center Director at Columbia Basin were racially discriminatory because, he speculated, they could be based on an idea that "Black people's time is something that's derogatory.'" *See id.* at p.19-20 (228:9-230:23). But there is no evidence that any decision-maker held such perceptions.

In short, Plaintiff's personal beliefs or speculation that others harbored racial stereotypes is not supported by any evidence that they actually did.[3]

**D. Comments Plaintiff alleges pertained to his disability do not show pretext for the selection decisions at issue.**

---

[3] Plaintiff suggested in passing that the Forest Service only hires Black employees only for lesser roles. ECF No. 100, 13-14 ¶ 59. Plaintiff has not proffered any statistical evidence to support this, and even if he had, statistics do not often show disparate treatment. *See Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1184 (10th Cir. 2006) (in disparate treatment cases, "overall employment statistics have little bearing on the specific intentions of the employer in making particular [employment] decisions ... [and] will rarely suffice to rebut an employer's legitimate, nondiscriminatory reasons for a particular adverse employment action"); *Waggoner v. Frito-Lay, Inc.*, No. 22-3111, 2023 WL 2967693, *6 (10th Cir. April 17, 2023) (unpublished) (statistics are "nearly meaningless" unless they eliminate nondiscriminatory explanations for overall disparity).

Plaintiff finally offers two incidents, unconnected to the non-selections, he contends show disability discrimination. Both involve earlier interactions with Hendren.[4]

First, he points to the fact that Hendren expressed concerns with Plaintiff's failure, while he was the Acting Center Director at Columbia Basin, to provide proper medical paperwork releasing him to work following a previous workers' compensation absence. Movant's Appx., p.19 (71:14-74:7). Plaintiff contends that this demonstrates Hendren's animus towards his disability. ECF No. 100, 15 ¶ 62. But he has not identified any evidence that Hendren did not honestly believe that such paperwork was required; to the contrary the record evidence shows that the paperwork was described as mandatory. Movant's Appx., p.204. Plaintiff has also not offered evidence that Hendren's concern about the paperwork was motivated by his disability. Rather, there is no dispute that Plaintiff's worker's compensation absence was *not* related to his disabilities. ECF No. 100, p.17 ¶ 67.

Second, Plaintiff contends that during the course of an interactive process to accommodate his disability, Hendren commented that Plaintiff could not be a Center Director with the accommodations then-recommended by his doctor (which included working remotely 2-3 days a week). *Id.* at 15-17 (154:15-156:5). This interactive process occurred over a year before the non-selections at issue, while Plaintiff was in a different position. *Id.* at 13 (139:2-139:20), 15-17 (154:3-156:5).

Importantly, in order for these prior comments to suggest pretext, Plaintiff must show that they infiltrated or affected the selection processes at issue here. "[P]rior incidents of discrimination are not probative of pretext unless they can somehow be tied

---

[4] It is undisputed that Hendren was not the final decision-maker in either selection. ECF No. 100, p. 5 ¶ 25; p. 18 ¶ 73.

to the employment actions disputed in the case at hand." *Wise v. DeJoy*, 71 F.4th 744, 754 (10th Cir. 2023) (finding no pretext based on prior discriminatory action unrelated to the employment action at issue); *e.g., Rutledge v. Bd. of Cnty Commrs.,* No. 22-3081, 2023 WL 4618335, *10 (10th Cir. July 19, 2023) (finding no pretext based on prior discriminatory comments where the plaintiff cannot tie the comment to the employment decision at issue); *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1184 (10th Cir. 2006) (finding no pretext where a discriminatory remark was made by only one of four decision-makers some nine months prior to the employment action at issue). A recent Tenth Circuit opinion, *Waggoner v. Frito-Lay, Inc.*, highlights the required nexus between discriminatory comments and the challenged employment decision. No. 22-3111, 2023 WL 2967693, *3-4 (10th Cir. April 17, 2023). There, the Tenth Circuit found that the plaintiff had presented sufficient evidence of pretext because there was evidence of discriminatory comments made "by the *sole* decision-maker" in the "context of the interview for the position and then again to explain [plaintiff's] non-promotion." *Id.* at *4 (emphasis added).

No similar evidence exists here. Even assuming that Hendren did comment that Plaintiff could not serve as a Center Director at that time if he had to be remote a few days per week, Plaintiff does not offer evidence to suggest Hendren's view affected the hiring processes here: Hendren was not the sole decision-maker; and the comment was not made during the course of the selections at issue. No other member of the Executive Leadership Team (of which all the panelists were) ever told him that he was not capable of doing the Center Director job because of his disability. Movant's Appx., p.13 (139:11-139:20). At least one panel member understood that he could perform the

Center Director role without accommodations, and he did not ask for any during the selection. Movant's Appx., p.42 (Terrell Affidavit).

Finally, Plaintiff's disability claim fails for a separate reason: under the Rehabilitation Act, he must demonstrate that his disability was the "sole cause" of the non-selections. *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021). Here, the record evidence would not permit a reasonable factfinder to conclude that the sole reason he was not selected for Center Director was his disability. His evidence of alleged disability discrimination by Hendren is not tied to the selection at issue and there is no evidence that any Panel member ever considered his disability—let alone the final decision-maker. *Cf. Conroy*, 707 F.3d at 1175 ("discount[ing] the persuasiveness" of evidence challenging the views of panel members where "the panel members were not the ultimate decisionmakers"). Plaintiff offers no evidence that Hendren influenced the other Panelists, who also decided not to advance Plaintiff. And the same Panel members actually selected Center Directors with disabilities.

### E.  Granting summary judgment is supported by Tenth Circuit precedent

Finally, recent Tenth Circuit decisions in the failure-to-hire context further supports granting summary judgment here. In each decision, the plaintiffs relied on evidence of pretext, including perceptions that their qualifications were superior and comments they viewed as discriminatory. *Compare Waggoner*, 2023 WL 2967693, *with Anderson*, 2023 WL 2945859, *and Brown*, 2023 WL 4743055.

The evidence submitted by Plaintiff aligns with that which the Tenth Circuit found insufficient to show pretext in *Anderson* and *Brown.* In those cases, the plaintiffs contended that they were more qualified based upon experience and seniority, but the

court ruled that the plaintiffs had not demonstrated an overwhelming merit disparity. *Brown*, 2023 WL 4743055, *5 (finding plaintiff could not demonstrate superior qualifications); *Anderson*, 2023 WL 2945859, *4 (neither the fact that plaintiff had "decades" of experience in comparison with the selected candidate's just ten or so years, nor that the plaintiff had a higher degree of education were sufficient to show an overwhelming disparity).

The Tenth Circuit's decision in *Brown* also supports concluding that an isolated comment that the plaintiff perceives as discriminatory is not enough to show pretext. In *Brown*, the court held that a question about "overqualification" asked during interviews did not show ageism because it could be attributed to other legitimate considerations like enthusiasm for the position. *See Brown*, 2023 WL 4743055, *7. Like the plaintiff in *Brown*, Plaintiff points to comments (not even occurring in the selection process) he subjectively views as showing discriminatory motive, but the evidence suggests that those comments were based on other, non-discriminatory considerations.

On the other hand, Plaintiff's evidence is far from the compelling evidence the Tenth Circuit found sufficient to show pretext in *Waggoner*. In that case, the court relied on: evidence of discriminatory comments made in direct relation to the hiring decision; that the interviews were wholly subjective; that the lone decision-maker did not ask formal questions or take notes; and that the employer was unable to offer examples of alleged performance concerns with the plaintiff. 2023 WL 2967693, at *3-5. Here, in contrast, there is no evidence of any discriminatory comments made in connection with the hiring decisions; every candidate during the interviews was asked the same questions; the Panelists' contemporaneous notes reflect specific weak answers given

by Plaintiff; and the Panelists consistently identified concerns, such as Plaintiff's failure to communicate with members of his management team.

In sum, Plaintiff's attempts to show discrimination do not create a genuine dispute of material fact that the reasons offered for the non-selections were pretextual.

## CONCLUSION

No reasonable factfinder, reviewing the record evidence, could find that the Forest Service's proffered reasons for its selection decisions were pretext for discrimination, nor particularly that Plaintiff's disability was the sole reason for his non-selections. For the foregoing reasons, the Court should enter judgment against Plaintiff and in favor of Defendant on Plaintiff's remaining claims.

Dated December 11, 2023                    Respectfully Submitted,

COLE FINEGAN

United States Attorney
*s/ Leslie Schulze*
Leslie Schulze
Erika Kelley
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0131
Fax: (303) 454-0407
Email: Erika.Kelley@usdoj.gov
           leslie.schulze@usdoj.gov
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individual:

Marisa L. Williams
Williams & Rhodes LLP
7887 East Belleview Avenue, #110
Englewood, CO 80111
303-220-0303
Fax: 303-830-7370
Email: mlw@williamsandrhodes.com
Attorney for Plaintiff

*s/ Leslie Schulze*
U.S. Attorney's Office