**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 20-cv-03809

KENITH DELESLINE,

     Plaintiff,

v.

TOM VILSACK, Secretary, U.S. Department of Agriculture, Forest Service.

     Defendant.

---

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment, ECF No. 108. The matter is fully briefed and is ripe for review. For the reasons that follow, Defendant's Motion is GRANTED.

## I.  BACKGROUND[1]

Plaintiff, who is African American and disabled due to hypertension and diabetes, has been employed by the U.S. Department of Agriculture's Forest Service Job Corps ("Job Corps") since 2000. During his employment, Plaintiff has held various positions. From 2011 through 2015, Plaintiff was the Deputy Center Director at Ouachita Job Corps Center. During that period, he served two separate details (temporary promotions) as acting Center Director, including one at the Columbia Basin Job Corps Center.

---

[1] The Court relies on the parties' statements of fact in their summary judgment briefing. *See* ECF No. 108 at 1-11; ECF No. 119 at 1-14. Unless otherwise stated, these facts are undisputed.

In 2013, Plaintiff applied for two open Center Director positions – one at Columbia Basin Job Corps Center, and one at Pine Knot Job Corps Center. A Center Director is responsible for collaborating with the Departments of Labor, Agriculture, Forest Service, local community groups, and organizations, and managing the Job Corps Center, including supervising key staff, developing training plans, conducting performance evaluations, resolving grievances, taking disciplinary actions, and providing for the development, education, and vocational training of a disadvantaged or at-risk student population.

As part of the hiring process, hiring panels were assembled to evaluate candidates and put forth recommendations to a final decision-maker. The hiring panel for the Pine Knot position was composed of Tina Terrell, Peggy Hendren, Sharon DeHart, Harris Maceo, and Lisa Fisher. Terrell was the final decision-maker and identifies as African American, Maceo identifies as Black Hispanic, and Hendren has a disability. The hiring panel for the Columbia Basin position was composed of Terrell, Hendren, DeHart, and Fisher. Again, Terrell was the final decision-maker. After a review of the applications, several candidates, including Plaintiff, were selected to interview with the panel.

For each position, some or all panel members conducted thirty-minute interviews, during which each candidate was asked the same questions. All five panel members participated in the Pine Knot interviews, but only Terrell and Hendren participated in the Columbia Basin interviews. The interview questions pertained to leadership, supervision, handling conflict/stress, applicants addressing their strengths and weaknesses, experience with at-risk youth, communication skills (verbal and written), strategic

planning, handling work assignments, and dealing with public relations. The panelists took notes on each candidate's responses during the interview.

Plaintiff was selected to interview for both positions; however, he was not recommended by either panel as a finalist. Ultimately, Brandon Pfeilmeier, a white man who is not disabled, was selected for the Pine Knot Center Director position and Michael Kelly, a white man,[2] was selected for the Columbia Basin Center Director position.

Plaintiff alleges that his non-selections were discriminatory based on his race, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and his disability, in violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*

## II.    LEGAL STANDARD

To succeed on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When analyzing a motion for summary judgment, the court must look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). However, the non-moving party may not simply rest upon its pleadings at this stage; rather, the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact

---

[2] Whether Kelly has a disability is a disputed fact.

could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249.

## III.   ANALYSIS

The parties agree that there is no direct evidence of discrimination, so the Court evaluates Plaintiff's claims under the three-step *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  At the first step of this framework, the plaintiff must establish a prima facie case of discrimination. *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). At the second step, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 970. If the employer does so, the burden returns to the plaintiff at the third step to show by a preponderance of the evidence "that the employer's justification is pretextual." *Id.* (quoting *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 540 (10th Cir. 2014)).

### A.  Legitimate Non-Discriminatory Reasons

For purposes of this motion, Defendant does not dispute that Plaintiff can establish a prima facie case for race and disability discrimination. *See* ECF No. 108 at 11. Accordingly, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for terminating plaintiff's employment. Defendant has carried that burden here.

Defendant asserts that the hiring panel viewed the selectees as stronger candidates than Plaintiff based on their internal and external experience, strengths and skillsets, and interview performances. *Id.* at 13. Specifically, Defendant identified the following legitimate, non-discriminatory reasons for not advancing Plaintiff: (1) Plaintiff's interviews were poor; (2) Panelists viewed time management as an important skill for a Center Director, and Plaintiff stated time-management was a challenge for him and exceeded his allotted interview time; (3) in the Pine Knot interview, Plaintiff expressed he can become emotionally invested in conflicts, a response that conflicted with one panelist's view of how a Center Director should act; and (4) Panelists had concerns about Plaintiff's past performance, including communication of his availability during work hours to staff, attendance at Center Director meetings, and teamwork and interpersonal skills. *Id.* The Court finds these are legitimate non-discriminatory reasons. *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (The second step only requires the defendant to "articulate a reason . . . that is not, on its face, prohibited and that is reasonably specific and clear.").

**B. Pretext**

The burden now shifts to Plaintiff to create a genuine dispute of material fact as to whether Defendant's reasons for his non-selection were pretextual. To do so, Plaintiff must provide evidence showing that Defendant's reasons "were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quoting *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004). Evidence of pretext may include, among other things: "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating criteria); and the use of subjective criteria." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (cleaned up).

In evaluating pretext, courts are mindful that the "relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301 (10th Cir. 1999), *overruled in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). The court's "role is not to second guess [the] employer's business judgment." *Stover*, 382 F.3d at 1076.

Plaintiff puts forth several categories of evidence that he believes demonstrates Defendant's proffered reasons for his non-selection were pretextual: (1) that Defendant relied on subjective criteria in the selection process; (2) that there were procedural irregularities in the selection process; (3) Defendant's prior treatment of Plaintiff and discriminatory remarks; (4) that Plaintiff is more qualified than the selected individuals;

6

and (5) that there are inconsistencies in Defendant's proffered reasons. *See* ECF No. 119. The Court considers each category in turn. Analyzing the evidence in the light most favorable to plaintiff and drawing all inferences in his favor, the Court concludes that his pretext arguments—either individually or taken as a group—fail to create a genuine, triable dispute of material fact about pretext.

### 1. Subjective Criteria

First, Plaintiff argues that the use of "subjective criteria" in Defendant's hiring process is evidence of pretext. Specifically, Plaintiff asserts the hiring panel's reliance on interviews to make the selection decisions is "suspicious" and could be perceived by the jury as a "pretext to hide discrimination." ECF No. 119 at 16-17. The Court is not persuaded that the use of subjective criteria in this case raises a triable dispute as to pretext.

Plaintiff insists that interviews were not a necessary part of Defendant's hiring process and that because Defendant had objective information available for each candidate, the use of interviews here is suspicious. *Id.* Plaintiff further argues that Terell's claim that the interviews were "vital" is "patently specious." *Id.* at 17. The Court disagrees. It is undisputed that the positions here were supervisory positions, and "such positions require abilities not fully measured by objective standards." *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981) (finding that reliance on interviews for supervisory position, while requiring subjective judgments, was not pretext for discrimination); *see also Martinez v. U.S. Dep't of Energy,* 170 F. App'x 517, 523 (10th Cir. 2006) ("[S]ubjective factors must play some role in considering individuals for upper level positions and do not, per se,

constitute discrimination."). Without more, Defendant's decision to interview candidates for a supervisory position does not suggest pretext.

Further, although the interviews contained a measure of subjectivity, the "existence of subjective criteria alone is not considered evidence of pretext . . . ." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007). Indeed, "some subjectivity is to be expected in every hiring decision" because employers must have discretion to choose between qualified candidates. *Conroy v. Vilsack*, 707 F.3d 1163, 1177 (10th Cir. 2013). And while "there is certainly a level of subjectivity in any interview-based selection process," interviewers do not always "use[ ] their discretion as a means for unlawful discrimination." *Santana v. City and County of De*nver, 488 F.3d 860, 866 (10th Cir. 2007). As a result, the Tenth Circuit "typically" will infer pretext from subjective criteria "only when the criteria on which the employers ultimately rely are entirely subjective in nature" and when the hiring process is especially opaque. *Conroy*, 707 F.3d at 1178 (citation omitted); *see also Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1200 (10th Cir. 2008); *Sasser v. Salt Lake City Corp*., 772 F. App'x 651, 670–71 (10th Cir. 2019). That is not the case here.

First, not all the reasons given for Plaintiff's non-selection were subjective—one of the reasons given was Plaintiff's challenges with time management, *see* 108-1 at 51-52, 107, 110, 113, 116, and another of the reasons was concern over Plaintiff's past performance, including his communication to staff about his availability and attendance at Center Director Meetings. *Id.* at 100, 141, 149-50. These are objective considerations. *See Ford v. Jackson Nat'l Life Ins. Co*., 45 F.4th 1202, 1219 (10th Cir. 2022) (evaluation process

8

that included subjective considerations not pretext where employer gave some objective measurements for hiring candidates over plaintiff). Second, that the interviewers found that Plaintiff struggled to answer some interview questions and gave non-concise responses as compared to the other candidates does not render the process impermissibly subjective. *See, e.g.*, *Turner*, 563 F.3d at 1146 ("[T]he interview questions and the candidates' agility in responding to identical inquiries were relevant to the candidates' qualifications; the evaluations made by the interview panels were not based on whims or unguided opinions."); *Martinez*, 170 F. App'x at 523 ("[N]o inference of pretext exists, because the government did not rely solely on subjective considerations but based its employment decisions on objective factors such as [Plaintiff's] non-responsive and incomplete answers to the application questions and the [knowledge, skills, and abilities] criteria, which were lacking in comparison with those of the successful applicants.").

Nor was the hiring process especially opaque. The Tenth Circuit's decision in *Conroy* is instructive on this point. In *Conroy*, a five-person panel used five criteria to evaluate and recommend candidates for a position with the Forest Service. *Conroy*, 707 F.3d at 1178. The panel chose a male candidate, and the female candidate sued, alleging that the panelists were given no guidance on how to rank candidates, leaving them to subjectively emphasize certain factors over others. *Id.* The Tenth Circuit rejected the plaintiff's argument, reasoning that the criteria being assessed was made known to the candidates, and all candidates were "evaluated according to the same criteria." *Id.* at 1178. The Tenth Circuit concluded that the "the agency's evaluation methods were not 'wholly subjective' and were not at all opaque." *Id.*

The same is true here. The evaluation system used by the panelists for the interviews was transparent and reflects that all candidates were evaluated according to the same criteria. *See* ECF No. 108-2 at 103-132. After evaluating all candidates' application packages, qualified candidates were selected for interviews. Each interview lasted the same amount of time, and the hiring panel asked the same interview questions in each candidate's interview. *See Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1145 (10th Cir. 2009) (criteria used to rate interviewees "not excessively subjective" where each applicant answered the same questions and interviewers ranked applicant responses using predetermined criteria). The questions pertained to leadership, supervision, handling conflict/stress, strengths, weaknesses, dealing with at-risk youth, communication skills (both verbal and written), strategic planning, handling work assignment, and dealing with public relations. These questions aligned with the published job description. ECF No. 108-1 at 46-47; ECF No. 108-2 at 103-132 (panel interview forms). The interview forms set out the same questions and provided room for comments by each panel member to note and reflect on the candidate's answer. Further, the panel system ensures "that the subjective judgment of no single individual would control . . . ." *Bauer v. Bailar*, 647 F.2d at 1046. For these reasons, the Court finds that Plaintiff has failed to demonstrate the interviews were used as a pretext for any discrimination.

2. Procedural Irregularities

Second, Plaintiff argues that three procedural irregularities occurred in the hiring process: (1) Defendant failed to use a "mandatory diverse panel;" (2) Defendant deviated from standard procedure by only using two interviewers in the Columbia Basin interview;

and (3) Defendant did not check all references. *Id.* at 17-19. The Court does not find that these reasons support Plaintiff's assertion of pretext.

"[D]isturbing procedural irregularities, including deviations from normal company procedure, provide support for a plaintiff's assertion of pretext." *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1138 n. 11 (10th Cir. 2003) (quoting *Garrett*, 305 F.3d at 1219–20 (10th Cir. 2002)) (internal quotation marks omitted). However, "[f]or an inference of pretext to arise on the basis of a procedural irregularity, . . . there must be some evidence that the irregularity 'directly and uniquely disadvantaged a minority employee.'" *Johnson*, 594 F.3d at 1213 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 454 n. 20 (10th Cir. 1995)). There is no such evidence here.

As to the first alleged procedural irregularity, Plaintiff contends that Defendant violated the Hiring Protocol's requirement for a diverse panel by not including panelists that were diverse in both position and grade since all panelists were GS-15 Assistant Directors and members of the Executive Leadership Team. Plaintiff does not dispute that the panelists were diverse in terms of ethnicity, race, gender, age, and disability status. Significantly, Plaintiff proffers no evidence that the Hiring Protocol required panelists to be diverse in all categories. *See Johnson v. Weld Cnty., Colo.,* 594 F.3d 1202, 1213 (10th Cir. 2010) ("Perhaps the most significant difficulty with this line of argument is the absence of record evidence suggesting that having seven members on the interview committee was contrary to any County hiring policy."). Further, it is reasonable that the panel would consist of Assistant Directors, as they directly oversee the Center Director positions. Plaintiff does offer any evidence that, when hiring for other Center Director positions,

11

Defendant usually includes lower-grade panelists. The Court is not convinced that this lack of diversity in all categories constitutes a procedural irregularity.

But even if it did, Plaintiff has failed to show that the irregularity "directly and uniquely disadvantaged" him as a minority employee. Plaintiff speculates that all panelists must have known about his disabilities because the Executive Leadership Team discusses EEO cases and "[he is] sure it came up often."  ECF No. 120 at 6 (122:5-21), 7 (124:12-23). Plaintiff's belief that all panelists knew of his disabilities lacks evidentiary support and is contradicted by the 2014 affidavits, wherein Maceo, Hendren, and Fisher stated that they were not aware of Plaintiff's disabilities at the time he interviewed for the positions. ECF No. 108-1 at 91, 98, 134. The Court is not required to adopt Plaintiff's version of the facts where that version is "blatantly contradicted by the record." *See Thomson v. Salt Lake County,* 584 F.3d 1304, 1312 (10th Cir. 2009). And even if all panelists knew of his disabilities, Plaintiff fails to offer any evidence that this knowledge was used against him. The panelists were the same for all candidates and there is no evidence that the panel was assembled in such a way as to ensure all panelists knew of Plaintiff's disability. After receiving the applications, the panelists moved Plaintiff onto the next step, which was the interview. One of the interviewers for both positions, Hendren, has a disability herself. Plaintiff offers no evidence that his disabilities were discussed or considered when the panelists made their hiring decisions. Thus, Plaintiff has failed to show that this alleged procedural irregularity uniquely harmed him.

Plaintiff's second and third allegations of procedural irregularities are equally unavailing. Plaintiff argues that the use of only two interviewers for the Columbia Basin

position and the failure to check Plaintiff's references are deviations from the Hiring Protocol. But there were only two interviewers for all of the Columbia Basin candidates' interviews, and the record demonstrates other instances where only two or three interviewers were used during the hiring process. ECF No. 120 at 18 (122:2-22). Additionally, it is undisputed that reference checks were only completed for position finalists, which Plaintiff was not. ECF No. 119 at 10 (SAF 9). "Thus, to the extent that there were irregularities in the interview process, those irregularities applied to all candidates equally and not just to members of a protected class." *Voltz v. Coca-Cola Enterprises Inc.*, 91 F. App'x 63, 70 (10th Cir. 2004).

### 3.  Prior Treatment of Plaintiff/Discriminatory Remarks

Third, Plaintiff argues that Defendant's prior treatment of him, including alleged discriminatory remarks made toward him, are evidence of pretext. An employer's prior discriminatory treatment of a plaintiff can be evidence of pretext. *See Garrett*, 305 F.3d at 1217. But the Tenth Circuit has made it clear that such evidence is not probative of pretext unless "the prior incidences of discrimination can somehow be tied to the employment actions disputed in the case at hand." *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000); *see also Plotke v. White*, 405 F.3d 1092, 1107 (10th Cir. 2005) (To show pretext, "[a] plaintiff simply must show a nexus between the allegedly discriminatory statements and the employer's decision.").

Here, Plaintiff attempts to establish pretext by referencing a 2015 EEOC judgment in his favor and the alleged discriminatory remarks made during the reasonable

accommodations process.[3] The 2015 judgment stems from Plaintiff's request for reasonable accommodations when he was serving as the Deputy Center Director at Ouachita Job Corps in 2012. As relevant here, Plaintiff sought telework as an accommodation. Plaintiff alleges that while he was undergoing the accommodations process, Hendren and Assistant Director Clyde Franklin told him that as Deputy Center Director he may occasionally need to fill in for the Center Director, and there was no way he could be a Center Director with his requested telework accommodation. ECF No. 108-1 at 16 (155:4-25), 17 (156:1-5). Three years later, in 2015, an EEOC judge ruled that Defendant failed to accommodate Plaintiff's telework request as a reasonable accommodation for his disability because it had failed to establish telework was unavailable to him. ECF No. 120 at 67-68. Plaintiff argues that although he has not found a case on point, a reasonable jury viewing this evidence could infer that the Panelists "harbored a bias against employees with disabilities, which may have affected their other decisions, including the CD selections here." ECF No. 119 at 20. Tenth Circuit law does not support this argument.

Although the alleged discriminatory remarks and failure to accommodate constitute prior incidences of discrimination, Plaintiff has failed to establish the requisite nexus

---

[3] In his deposition, Plaintiff also claims that he may have been viewed as a "stereotypical angry Black man" and that concerns about his availability and work hours while he served at Columbia Basin amounted to "racial slurs." ECF No. 108-1 at 20. But, as Defendant pointed out in its Motion, Plaintiff's personal feelings and subjective opinions are not enough to create a genuine dispute as to pretext. *See* ECF No. 108 at 20-21. Further, Plaintiff appears to concede this point, as he does not respond to Defendant's arguments or raise these views as evidence of pretext in his Response. *See Connell Solera, LLC v. Lubrizol Advanced Materials, Inc.*, No. 21-CV-0336-WJM-SKC, 2022 WL 326562, at *9 (D. Colo. Feb. 3, 2022) (finding that a nonmoving party's failure to respond to a claim in a motion for summary judgment constitutes a concession).

between the prior incidences and the employment decision at issue here. The Tenth Circuit recently addressed the required nexus in *Waggoner v. Frito-Lay, Inc.*, No. 22-3111, 2023 WL 2967693, at *3 (10th Cir. Apr. 17, 2023). In *Waggoner,* the Tenth Circuit found that there was a sufficient nexus where the plaintiff presented evidence of discriminatory comments made "by the sole decisionmaker" that "were made in the context of the interview for the position and then again to explain [plaintiff]'s non-promotion." *Id.*

Here, Plaintiff does not dispute that Defendant's previous failure to accommodate and the alleged discriminatory remarks are unrelated to the challenged non-selections at issue. The EEOC judgment was related to Plaintiff's accommodations requests for a different position and Hendren was not the sole (or final) decision-maker for the non-selections at issue. Additionally, her alleged comments were not made in the context of the interviews for the positions or as the reason for Plaintiff's non-selection. And despite making this alleged comment, she was not responsible for the 2012 failure to accommodate. *See* ECF No. 120 at 12-13. Crucially, the timeline reveals that even if Hendren did make these comments, they did not prevent Plaintiff from serving as Center Director. The alleged remarks were made in May 2012, and by December 2012 Plaintiff was serving as Acting Center Director of the Columbia Basin Job Corps Center. ECF No. 108-1 at 26. This suggests that the alleged remarks had no impact on his ability to serve as Center Director and that Plaintiff's request for telework was not held against him.

Further, Plaintiff does not allege that he requested any accommodations, including telework, for the Center Director positions at issue. In her affidavit, Terrell (the final

15

decision-maker) stated that Plaintiff could perform the essential functions of the Center Director's position and was not informed that Plaintiff needed accommodations. ECF No. 108-1 at 42. Plaintiff has not shown that Hendren still believed Plaintiff needed accommodations or that she still believed a Center Director could not telework at the time of the 2013 interviews. Plaintiff also has not shown that Hendren shared this belief with any of the panelists before or during Plaintiff's interviews. Thus, Plaintiff has not shown a sufficient nexus between the 2012 prior treatment/discriminatory remarks and Plaintiff's 2013 non-selections. *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1184 (10th Cir. 2006) (no nexus between discriminatory remark and plaintiff's termination where remark was made by only one of four individuals who decided to terminate plaintiff, no overt racial animus was attributed to other decisionmakers, and remark was temporally remote from the termination).

### 4.  More Qualified

Next, Plaintiff contends he was more qualified than Pfeilmeier and Kelly such that Defendant's failure to select him evinces pretext. The Court "will draw an inference of pretext where 'the facts assure us that the plaintiff is better qualified than the other candidates for the position.' " *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003)). However, the Court will not draw that inference based upon "minor differences between plaintiff's qualifications and those of successful applicants"; rather, there must be "an overwhelming merit disparity." *Id.* Plaintiff has failed to make that showing.

16

Defendant's position announcements informed candidates on how they would be evaluated. The position announcements state that the basic qualifications required are one year of specialized experience equivalent to at least the G-11 level or one year of specialized experience equivalent to the GS-13 level. ECF No. 108-1 at 31. Additionally, the posting announcement states:

> You will be evaluated based on your qualifications for this position as evidenced by the education, experience, and training you described in your resume, as well as the responses to the Occupational Questionnaire to determine the degree to which you possess the knowledge, skills, and abilities listed below:
>
> - Knowledge of residential programs dealing with youth education and training
> - Ability to develop and maintain cooperative internal and external relations (communicate other than in writing)
> - Ability to plan and organize work
> - Ability to supervise
> - Ability to communicate in writing
> - Ability to analyze complex programs

*Id.* at 32. Based on these qualifications, Plaintiff contends he is overwhelmingly more qualified with respect to education, training, and experience. Plaintiff has a master's degree in management, a bachelor's degree in psychology, a state teaching certificate for both elementary education and psychology, certification as an advanced fire fighter for the Forest Service, and was certified as a Qualified Substance Abuse Professional in 2002. *Id.* at 25, 29. Plaintiff's resume describes his (then) 18 years of Job Corps experience in all program areas. *Id.* at 24. Prior to joining the Job Corps, Plaintiff had a career teaching, counseling, and treating youth, including those with special needs, emotional or substance abuse issues. *Id.* at 28. Further, Plaintiff's resume reflects that he

had held the permanent position as Deputy Center Director at Ouachita Job Corps Center since 2011 and received two temporary promotions to serve as acting Center Director for a total of 6-8 months. *Id.* at 26-27.

Viewing the facts "as they appear to the person making the decision," the Court does not find that Plaintiff has shown he was overwhelmingly more qualified than Pfelmeier and Kelly in these areas. *See Zamora v. Elite Logistics, Inc.,* 478 F.3d 1160, 1166 (10th Cir. 2007) (en banc). Pfeilmeier, the Pine Knot selectee, was serving as the Pine Knot Acting Center Director at the time of his interview, a role he began in July 2011. ECF No. 108-1 at 86; ECF No. 108-2 at 160. He worked for the U.S. Coast Guard for thirteen years before joining the Job Corps. ECF No. 108-2 at 160-62. He spent his first three years at the Coast Guard working at its training center, providing remedial and basic training for youth. *Id.* at 161. Although Plaintiff has a master's degree and Pfeilmeier had only a bachelor's degree, the job posting did not require a post-graduate degree. The Pine Knot panelist's notes and the position concurrence document reflect that the panelists credited Pfeilmeier's relevant internal experience, supervisory military experience, and experience dealing with youth. *Id.* at 86; ECF No. 108-2 at 132.  The minor differences in the experience, training, and education between Plaintiff and Pfeilmeier do not rise to the level of "overwhelming" disparity required to show pretext.

Similarly, Kelly, the Columbia Basin selectee, began working at Columbia Basin in 2008. ECF No. 108-2 at 197-98. At the time of the interviews, he was serving a temporary promotion as the Columbia Basin Acting Center Director, a role he began in February 2013. *Id.* at 197. Prior to that, he worked for the Navy for 20 years. *Id.* at 200. He had

18

experience working with youth beginning in June 2011 as the Works Program Officer at Columbia Basin. *Id.* at 198. Again, although Plaintiff had a master's degree and Kelly only had an associate's degree, the job posting did not require a post-graduate degree. The Columbia Basin panelist's notes and position concurrence document reflect that the panelists credited Kelly's military experience, experience with youth and staff, and leadership skills in making their selection. ECF No. 108-1 at 88-89; ECF No. 108-2 at 176-188. As with Pfeilmeier, these minor differences in qualifications do not constitute an "overwhelming" disparity.

And even assuming Plaintiff's qualifications with respect to education, training, and experience are superior, he has not demonstrated that he is overwhelmingly more qualified on the whole, taking into account all of the factors that Defendant found relevant. *See Conroy*, 707 F.3d 1163 at 1173-74 (finding that even if plaintiff was more qualified in technical and communication skills, "she fails to demonstrate that she was overwhelmingly more qualified than [the selectee] *on the whole*, taking into account all of the factors that the agency found relevant.") (emphasis in original). Based on the job posting and interview questions asked, it is clear that the panelists viewed interpersonal skills, time management, ability to handle conflict, and leadership skills as important qualities for a Center Director. Based on the concurrence documents and interview notes, the panelists found Pfeilmeier and Kelly superior in those categories.

Thus, the Court concludes that Plaintiff's argument concerning his superior qualifications fails to raise a "genuine doubt about [Defendant's] motivation" in selecting

Pfeilmeier and Kelly over Plaintiff. *Santana*, 488 F.3d at 866 (quoting *EEOC v. Horizon/CMS Healthcare Corp*., 220 F.3d 1184, 1200 (10th Cir. 2000))

     5. <u>Inconsistencies</u>

Finally, Plaintiff argues that inconsistencies in the panelist's proffered explanations for his non-selection support a determination of pretext. He contends that the only plausible reason for not selecting him was his interviews and that "[e]very other criticism the Agency articulated to justify his non-selection lacks the indicia of reliability found in the Panelists' 2014 affidavits and materialized under circumstances suggesting dishonesty or bad faith." ECF No. 119 at 25-26.

The Tenth Circuit recognizes that a plaintiff can show pretext by demonstrating that the employer's explanation for its decision "was so implausible, incoherent, or internally contradictory" that the decision must have been made on some other basis. *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004). "The focus is on the employer's justification for its decision—for example, did the employer offer inconsistent reasons for its decision, or is the employer's explanation so implausible that a jury could find it unworthy of credence?" *Conroy*, 707 F.3d at 1174 (citing *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1309–10 (10th Cir. 2005). The Court finds that Plaintiff has failed to demonstrate inconsistencies that suggest pretext.

Plaintiff focuses on the 2014 affidavits, wherein the panelists all gave his interview performance as the reason for Plaintiff's non-selection. Hendren, however, also stated that her primary reason for not referring him to the selecting official was based on his performance when he was the Acting Center Director for Columbia Basin, specifically the

reports that he would come into work late and did not let his staff know when he was going to come in. *See* ECF No. 108-1 at 99-100. Plaintiff disputes the veracity of Hendren's statement, but in his rebuttal affidavit, he acknowledges that Hendren had heard reports of Plaintiff being late and employees not knowing his whereabouts. ECF No. 120 at 25-26. Plaintiff's explanation after the fact does not change the outcome, because the "relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Bullington*, 186 F.3d at 1301; *see also Watts v. Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001) ("[I]n determining whether the proffered reason for a decision was pretextual, [the Court] examine[s] the facts as they appear to the person making the decision."). Plaintiff offers no evidence to suggest that Hendren did not honestly believe the reports she received about Plaintiff's previous performance. Further, Maceo, who Plaintiff contends he "had a better relationship with" than Hendren, ECF No. 119 at 18*, also testified in his deposition that he had heard Plaintiff would "come in late to the center, would leave early" and "center management did not know where he was at . . . [or] what time he was coming in." ECF No. 108-2 at 141. Thus, the Court does not find Hendren's reason for Plaintiff's non-selection so "implausible that a jury could find it unworthy of credence." *Id.*

As for the remaining panelists' reliance on Plaintiff's interview performance as the reason for his non-selection, the Court has already found that the reliance on the interviews does not suggest pretext. And although some of the panelists expanded on their reasons for Plaintiff's non-selection in their depositions, the Court does not find that

the inconsistencies rise to a level that suggests dishonesty or bad faith. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1002 (10th Cir. 2011) ("[I]nconsistency evidence only shows pretext if 'the employer has changed its explanation under circumstances that suggest dishonesty or bad faith.'" (quoting *Jaramillo*, 427 F.3d at 1310). The panelists never abandoned their primary reasons for Plaintiff's non-selection, and Plaintiff has failed to demonstrate that those reasons should not be credited as legitimate and non-discriminatory.

### C. Totality of the Evidence

In assessing whether Plaintiff has shown pretext, the Court must not "look at each piece of evidence in isolation;" rather, it is "obliged to consider their evidence in its totality." *Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008). Based on the totality of the circumstances here, the Court finds that Plaintiff has failed to establish that the reasons given for his non-selections were pretextual as to constitute a triable issue as to racial and disability discrimination. Accordingly, Plaintiff has failed to raise a genuine issue of fact that Defendant's proffered reasons for its selection decisions were pretextual, and summary judgment in Defendant's favor is warranted.

## IV.   CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF No. 108, is **GRANTED.**

DATED: September 19, 2024

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge